STATE BANK OF LA CROSSE, Plaintiff-
Respondent,

v.

Francis A. ELSEN and C. Martha Elsen,
Defendants-Appellants.

Court of Appeals

No. 84–1905. Submitted on briefs October 23, 1985.—
Decided January 24, 1986.
(Also reported in 383 N.W.2d 916.)

For the defendants-appellants the cause was submitted on the briefs of *Bryant Klos* and *Steele, Klos & Flynn—Chartered* of La Crosse.

For the plaintiff-respondent the cause was submitted on the brief of *Daniel E. Dunn* and *Smyth, Sauer, Becker, Lynch & Smyth, Ltd.,* of La Crosse.

Before Gartzke, P.J., Dykman, J., and Eich, J.

GARTZKE, P.J.   Francis and Martha Elsen appeal a summary judgment in favor of State Bank of La Crosse foreclosing a real estate security agreement on their home. We conclude that a genuine factual issue exists as to whether the terms of the security agree-

ment resulted from the mutual mistake of the parties or from the bank's misrepresentation of its contents. We therefore reverse.

Section 802.08, Stats., governs summary judgment. Its purpose is to determine whether a dispute can be resolved without a trial. Summary judgment methodology must be followed by both the appellate court and the trial court. *In re Cherokee Park Plat,* 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582 (Ct.App. 1983). Because the trial court did not follow that methodology, it bears repeating and discussion.

Under that methodology, the court first examines the pleadings to determine whether claims have been stated and a material issue presented. If the complaint states a claim and the pleadings show the existence of factual issues, the court examines the moving party's affidavits or other evidence for evidentiary facts admissible in evidence or other proof to determine whether that party has made a *prima facie* case for summary judgment. If the moving party made a prima facie case, the court examines the opposing party's affidavits for evidentiary facts or other proof to determine whether a genuine issue exists as to any material fact, or reasonable conflicting inferences may be drawn from the undisputed facts, and therefore a trial is necessary. *Id.* at 116, 334 N.W.2d at 582–83.

Summary judgment procedure prohibits a court, trial or appellate, from deciding an issue of fact. The methodology is intended to prevent a trial by affidavit or deposition, *Lecus v. American Mut. Ins. Co. of Boston,* 81 Wis. 2d 183, 190, 260 N.W.2d 241, 244 (1977), or using summary judgment as a "short cut to avoid a trial." *Schandelmeier v. Brown,* 37 Wis. 2d 656, 658, 155

N.W.2d 659, 660 (1968). The court determines only whether a factual issue exists, resolving doubts in that regard against the party moving for summary judgment, *In re Cherokee Park Plat,* 113 Wis. 2d at 116, 334 N.W.2d at 583, because that party has the burden of establishing the absence of a factual issue. *Garrett v. City of New Berlin,* 122 Wis. 2d 223, 228, 362 N.W.2d 137, 140 (1985). The court also views the facts in the light most favorable to the party opposing the motion. *Kraemer Bros. v. United States Fire Ins. Co.,* 89 Wis. 2d 555, 567, 278 N.W.2d 857, 862 (1979). If a dispute concerning the material facts exists or the material presented is subject to conflicting factual interpretations or inferences, summary judgment must be denied. *Id.*

With these principles in mind, we proceed first to the pleadings. The foreclosure complaint alleges that on August 4, 1982 Francis and Martha Elsen executed the real estate security agreement. It secures debts arising out of past, present or future credit granted to defendants or to debts guaranteed by them. February 18, 1983 Francis, as guarantor, and his son, Richard Elsen, signed a note for $44,108.70 payable to the bank. The note is in default. We conclude that the complaint states a claim.

Read liberally,[1] the answer alleges that because the security agreement varies from the bank's August 3, 1982 letter to the defendants, the terms of the agreement result from the mutual mistake of the parties or from the defendants' mistake coupled with the bank's fraud or inequitable conduct. The letter states that the

---

[1] We are required to read the pleadings liberally to do substantial justice between the parties. *Strid v. Converse,* 111 Wis. 2d 418, 422, 331 N.W.2d 350, 353 (1983).

bank would finance the purchase of a truck by the defendants' son

on the condition that a mortgage of $15,000 on your home ... can be held in our file, unrecorded, until two investors that Dick is bringing in have their $24,000 available. This will pay our loans down by $14,000 and we will retain the semi and trailer as collateral. Once Dick has this investor money, your mortgage will be voided. However, if these investors fail to materialize, a $15,000 mortgage will be recorded against your home until such time as the loan on the semi is paid off.

Defendants assert that according to the letter, the agreement would create security only for the $15,000 loan, and that the loan has been paid. They therefore seek reformation of the security agreement and its satisfaction.

A written agreement may be reformed if it is based on the mutual mistake of the parties or results from the mistake of one party and the fraud of another. *Frantl Industries v. Maier Construction, Inc.,* 68 Wis. 2d 590, 594, 229 N.W.2d 610, 612 (1975). We conclude that the answer raises factual issues which, if resolved in defendants' favor, entitle them to reformation of the agreement and to its satisfaction. The answer pleads a defense to the foreclosure action.

We turn to the affidavits or other proof supporting the bank's motion for summary judgment. Because the pleadings do not constitute evidence or other proof for purposes of granting or denying the motion, *Krezinski v. Hay,* 77 Wis. 2d 569, 572, 253 N.W.2d 522, 524 (1977), we rely solely on the affidavits or other proof.

Dean Olson, a bank officer, states in his affidavit that the bank lent the defendant's son $6,000 on one occasion and $18,500 on another. As a condition to the $18,500 loan, the bank required the $25,000 guaranty of Francis to secure both debts. Francis executed the guaranty. In August 1982 Richard sought an additional $15,000 loan to buy a truck. The bank refused to make that loan unless the bank had a mortgage on defendant's home. Francis and Martha subsequently executed the real estate security agreement. The agreement expressly secures all debts and obligations of the signers as customers or as guarantors of customers of the bank. Olson states that no other representations were made to Francis or Martha. The bank lent the $15,000 to the son. On February 18, 1983 Francis signed the $44,108.70 note by which he obligated himself for the entire balance owed by his son. The note referenced the mortgage on the Elsen home as security. The bank later sold the truck for $15,000, which was applied to the note. The bank took judgment against the son for the balance owed on the note, $34,181.29. We conclude that the affidavit, standing alone, sets forth evidentiary facts which establish a *prima facie* case in favor of the foreclosure action.

We turn to the affidavits or other evidence submitted by the defendants in opposition to the bank's motion. Defendant's attorney submitted an affidavit which quotes from parts of depositions by Francis, Martha and Olson. References to the deposition page are included for each quotation. Francis deposed that he received the bank's letter and the security agreement on the same day. When Francis signed the agreement, he relied on the letter, which Dean Olson had

signed. He understood that the agreement provided security for the $15,000 loan and was "temporary" until the investors came through. He signed the $44,108.70 note with the understanding that if the truck were sold, the mortgage would be satisfied and the balance on the note would be $25,000. He told the bank officer that this was his understanding. Martha deposed that she signed the security agreement after receiving the bank's letter. She believed the letter stated what she was signing. Olson deposed that he drew the security agreement when he prepared the August 3, 1982 letter. He did not discuss the terms of the agreement with Francis or Martha. He assumed they could read.

The trial court made written findings of fact and conclusions of law. It found that the security agreement was intended to secure the debts of the defendant's son to the bank, that the bank originally intended to enforce its agreement only to the extent of $15,000, that the $44,108.70 note is nevertheless secured by the agreement, that Martha was not aware of the latter note and did not consent to a lien against the homestead in excess of $15,000, and that the lien against her interest is limited to that amount. The court also found that the bank made no fraudulent misrepresentation to the defendants which induced them to execute the real estate security agreement, and that the defendants were negligent and not justified in relying on any representation by the bank as to the contents of the agreement. The court concluded that the bank was entitled to foreclosure and entered the judgment appealed from.

Findings of fact are unnecessary under and depart from summary judgment methodology. The trial

515

court's task is to determine if a genuine issue exists as to any material fact. Section 802.08(2), Stats. If a factual issue exists, the motion must be denied. If no factual issue exists and the moving party is entitled to a judgment as a matter of law, then the judgment sought must be rendered. *Id.* In either event, denial or grant, the trial court makes no factual findings. The denial or grant is immediate.

■

The pleadings raised factual issues regarding mistake and misrepresentation. The affidavit supporting the bank's motion impliedly denied that the bank erred or misrepresented the terms of the security agreement to the defendants. According to defendant's opposing affidavit, the bank's letter expressed the mutual intent of the parties and represented the contents of the security agreement, and therefore the terms of the agreement resulted from mutual mistake or misrepresentation. The trial court's finding of fact that the bank made no fraudulent misrepresentations resolved a disputed issue of fact. The trial court should have concluded that defendants' affidavit opposing the bank's motion raised genuine issues of material fact as to whether a material mistake or a misrepresentation occurred. Those issues must be tried.

■

The trial court found that the defendants were negligent and not justified in relying upon any representation by the bank as to the contents of the security agreement. The court erred. The court should have reserved the negligence issue for trial in connection with both the misrepresentation and mutual mistake issues.

■

Summary judgment does not lend itself well to negligence questions. *Ceplina v. South Milwaukee School Board,* 73 Wis. 2d 338, 342–43, 243 N.W.2d 183, 185 (1976). Whether a person exercised ordinary care usually is not determinable by summary judgment. *Ruppa v. American States Ins. Co.,* 91 Wis. 2d 628, 646, 284 N.W.2d 318, 325 (1979). Negligence involves the reasonableness of a person's action or inaction. Reasonableness turns on the totality of the facts and circumstances. Summary judgment seldom can adequately portray that totality and therefore is usually inappropriate to resolve negligence issues. *Hunter of Wisconsin, Inc. v. Hamilton,* 101 Wis. 2d 460, 471, 304 N.W.2d 752, 757 (1981); *In re Cherokee Park Plat,* 113 Wis. 2d at 122 n.3, 334 N.W.2d at 585.

Of course, if the facts are undisputed, a question of law arises as to whether a person negligently relied on a misrepresentation regarding the contents of a written agreement. *Ritchie v. Clappier,* 109 Wis. 2d 399, 406, 326 N.W.2d 131, 134 (Ct.App. 1982). In *Ritchie,* however, the facts were thoroughly explained at trial regarding the background, education and experience of the party claiming fraud and the circumstances under which the agreement was signed.

The trial court did not decide whether a factual issue exists regarding mutual mistake and whether negligence would bar the right to reformation if such a mistake occurred. Whether a mutual mistake has occurred is an issue of fact. *Ahnapee & W. R. Co. v. Challoner,* 34 Wis. 2d 134, 137, 148 N.W.2d 646, 648 (1967). Whether negligence should bar reformation is a question of law.

The defendants' right to reformation for mutual mistake is not necessarily barred by their possible negligence in failing to read the security agreement. If the parties reached an agreement which preceded the writing, "a party's negligence in failing to read the writing does not preclude reformation if the writing does not correctly express the prior agreement." *Restatement (second) of Contracts* sec. 157 comment b, at 417 (1981). Professor Corbin agrees:

The fact that a written instrument was signed or accepted without reading it is not sufficient ground for refusing a decree of reformation if its contents are at variance with the antecedent agreement and understanding of the parties. That the failure to read the instrument was negligent is not enough to prevent correction of the mistake by a decree of reformation.

3 *Corbin on Contracts* sec. 607, at 664–65 (1960).[2]

---

[2] Wisconsin has followed the restatement position with regard to standard form insurance contracts, *Journal Co. v. General Acc. F. & L. Assur. Corp.,* 188 Wis. 140, 148, 205 N.W. 800, 803 (1925), and where one party has relied on the drafting party to incorporate the terms of the oral agreement. *Stadele v. Resnick,* 274 Wis. 346, 352, 80 N.W.2d 272, 276 (1957); *Pickard v. Farmers & Merchants Bank,* 171 Wis. 167, 170, 176 N.W. 782, 783–84 (1920). The party seeking reformation is not barred by failing to read the resulting written contract. Although there is language in other cases that the negligence of a party in not reading a contract which would disclose the existence of unintended language bars reformation, *Carney Rutter Agency v. Central Office Buildings,* 263 Wis. 244, 253, 57 N.W.2d 348, 352 (1953), we have been unable to find any Wisconsin case that relies on that ground to defeat reformation where mutual mistake otherwise exists.

We conclude that genuine issues of material fact exist as to whether the failure of the security agreement to conform to the bank's letter to the defendants resulted from the mutual mistake of the parties or from a misrepresentation by the bank to them regarding the contents of the agreement. The bank's motion for summary judgment should have been denied. A trial is necessary.[3]

*By the Court.*—Judgment reversed and cause remanded for trial.

---

[3] The defendants countered the bank's motion with their own motion for summary judgment seeking dismissal of the bank's foreclosure action. Because disputed factual issues exist regarding the defendants' defenses of mutual mistake and misrepresentation, their motion was properly denied.