**In re: Denise Renee HARTLEY and Vincent Levi Hartley, Debtors.**

**Melvyn L. Hoffman, Trustee, Plaintiff,**

**v.**

**Denise Renee Hartley and Vincent Levi Hartley, Defendants.**

**Bankruptcy No. 11–13956–7.
Adversary No. 12–50.**

United States Bankruptcy Court,
W.D. Wisconsin.

Sept. 11, 2012.

Melvyn L. Hoffman, Esq., Hoffman Law Firm, LLC, La Crosse, WI, for Plaintiff.

Joan K. Parke, Esq., Bosshard Parke Ltd., La Crosse, WI, for Defendant.

## DECISION

THOMAS S. UTSCHIG, Bankruptcy Judge.

This case involves a dispute over the equity in a section of land that includes the debtors' homestead. The parties filed a joint pretrial statement in which they stipulated to the essential facts. At the pretrial conference, they agreed to submit the matter to the Court on briefs as neither side believed there were any disputed issues of material fact. The briefs have been submitted and on August 13, 2012, the Court conducted a telephone conference in which the parties were permitted the opportunity to submit their final arguments. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O), and the Court has jurisdiction under 28 U.S.C. § 1334. The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052.

The Hartleys filed bankruptcy in June of 2011. They own 82 acres of real estate which they have historically treated as one contiguous parcel, although it is possible to essentially divide it in half. As of the filing, the entire property was encumbered by a mortgage in the approximate amount of $135,000.00.[1] In their schedules, the Hartleys initially listed the property as worth $146,250.00.[2] After they filed the case, a neighbor offered to purchase the property for $235,000.00.[3] The Hartleys disclosed this offer to the trustee, who then obtained an independent appraisal which indicated the property might be worth even more. According to the trustee's appraisal, the 40–acre parcel which includes the Hartleys' home is worth about $180,000.00, while the remaining 42 acres of unimproved land are worth about $82,000.00, for a total of $262,000.00.[4]

The Hartleys initially claimed the federal exemptions. While the trustee was investigating the value of the property, they amended their schedules to utilize the more generous Wisconsin homestead exemption, which allows them to jointly protect up to $150,000.00 in home equity.[5] See Wis. Stat. § 815.20(1). Based on the trustee's appraisal, there may be as much as $127,000.00 in equity in the entire property. The Hartleys believe that they should be entitled to protect this amount. They also indicate that the sale has fallen through and there is no pending offer on the property. The trustee believes that the estate should share in the equity and seeks a declaratory judgment apportioning the Hartleys' homestead exemption and the lender's mortgage in such a way that he can consider marketing the property on behalf of the bankruptcy estate.

■■■ The parties agree that the potential equity is less than the available home-

1. *See* Joint Pretrial Statement, Uncontested and Stipulated Facts ¶ 6.

2. *See* Schedule A to the Petition filed on June 20, 2011. The Hartleys also claimed the land as community property and indicated that the amount of the secured claim was $134,347.85.

3. *See* Joint Pretrial Statement, Plaintiff's Statements ¶ 1 n.3. This purchase option expired on June 1, 2012. The parties appear to agree that there is no other pending offer to purchase.

4. *See* Trustee's Complaint ¶ 8. The trustee contends that when viewed as a ratio, the Hartleys' homestead generates 68.7% of the total value, while the 42–acre non-homestead parcel produces the remaining 31.3%. The Hartleys have not objected to the trustee's valuation of the respective parcels or their relationship to the total value of the land. They simply believe that even at the higher values, they are entitled to protect all of the net equity with the Wisconsin homestead exemption.

5. *See* Joint Pretrial Statement, Uncontested and Stipulated Facts ¶ 4.

stead exemption. The Hartleys' position is that since they are claiming less than the statutory maximum, they should be entitled to shield *all* of the equity as exempt. However, the trustee notes that Wisconsin law contains certain limitations on the homestead, including a geographic restriction on how much land may be claimed. An "exempt homestead" is defined as "the dwelling ... and so much of the land surrounding it as is reasonably necessary for its use as a home, but ... not exceeding 40 acres." *See* Wis. Stat. § 990.01(14). Put simply, while Wisconsin exemption law is supposed to be construed liberally in favor of the debtors, they are not entitled to claim more than 40 acres as their homestead. The parties have agreed to treat the 40–acre parcel as the Hartleys' homestead, thus eliminating any debate about how much land might be "reasonably necessary" for use as a home.[6] The unresolved issue is how the Hartleys' homestead rights intersect with the lender's mortgage and the trustee's obligation to pursue assets, such as the equity in non-exempt real estate, for the benefit of unsecured creditors.

■ Given that the value of the remaining 42 acres creates at least part of the equity, the trustee believes the estate should receive a proportionate share of it.[7] After all, the trustee's task is to maximize the recovery for unsecured creditors. *Corporate Assets, Inc. v. Paloian*, 368 F.3d 761, 767 (7th Cir.2004). This is typically accomplished by selling off any non-exempt assets, and trustees can also sell partially exempt assets in order to obtain the non-exempt equity. So if a married couple files bankruptcy in Wisconsin and owns an unencumbered home worth $260,000.00, the trustee could sell the home, pay the couple their $150,000.00 homestead exemption, and use the balance to pay the claims of unsecured creditors. Likewise, if a debtor owns both homestead property and additional non-exempt land, the trustee is typically free to sell the non-exempt property even if the debtor has yet to exhaust the homestead exemption. This simply reflects that the Wisconsin legislature opted to protect certain forms of property rather than provide debtors with a blanket monetary exemption with which they might protect anything they want. *See In re Lark*, 438 B.R. 652, 657 (Bankr.W.D.Wis.2010). The wrinkle here is that even though the total equity is generated by a mixture of homestead and non-homestead land, there is a valid mortgage which covers it all.

■ It must be remembered that the Wisconsin exemption statute is to be "construed to secure its full benefit to debtors." Wis. Stat. § 815.18(1). The Wisconsin Constitution provides the legislature with "broad discretionary powers" to create exemptions for the benefit of debtors. *See* Article I, Section 17 of the Wisconsin Constitution; *see also North Side Bank v. Gentile*, 129 Wis.2d 208, 385 N.W.2d 133, 138–39 (Wis.1986). The homestead exemption is to be liberally construed in favor of the debtor, and "homestead rights are preferred over the rights of creditors." *In re Mann*, 82 B.R. 981, 984 (Bankr. W.D.Wis.1986) (quoting *Schwanz v. Teper*,

---

6. *See* Stipulation Regarding Exemptions filed on January 23, 2012, and approved by an Order dated February 17, 2012.

7. The trustee's mathematical approach is straightforward. He believes that because the non-exempt parcel generates about one-third of the total value, a proportionate share of the equity should be treated as non-exempt as well. For example, if a sale were to generate $120,000.00 in net proceeds (after payment of the mortgage and closing costs), the trustee submits that the estate should get just under $40,000.00.

66 Wis.2d 157, 163, 223 N.W.2d 896 (Wis. 1974)).

■■■■ In keeping with this philosophy, Wisconsin law directs that, if possible, a foreclosing lender should liquidate any non-homestead property before pursuing the sale of a debtor's homestead. Wis. Stat. § 846.11 provides as follows:

> If any defendant appear and answer that any portion of the mortgaged premises is an exempt homestead the court shall ascertain whether such be the fact, and if so whether the part of the mortgaged premises not included in the exempt homestead can be sold separately therefrom without injury to the interests of the parties, and in that case shall direct in the judgment that the exempt homestead shall not be sold until all the other mortgaged lands have been sold.

This statute is designed to protect debtors in a specific set of circumstances: namely, in a situation in which a single lender has one mortgage which covers both homestead and non-homestead property. If these criteria are met, Wisconsin gives the debtor the option "to insist that, where a mortgage covers both homestead and non-homestead property, the nonhomestead property be sold first." *Anchor S & L Ass'n v. Week*, 62 Wis.2d 169, 213 N.W.2d 737, 739 (Wis.1974); *Valley Bank v. Jennings*, 198 Wis.2d 857, 544 N.W.2d 243, 246–47 (Wis.Ct.App.1995).

The parties have agreed to treat the 40 acres surrounding the Hartleys' residence as the homestead. They have also agreed that the remaining 42 acres are worth about $82,000.00 and could be sold separately. In a foreclosure context, these presumptions would likely mean that the mortgage lender would be required to sell the 42-acre parcel first and apply the proceeds to the debt, leaving only a small balance due against the homestead. At that point, the debtors would be able to utilize their exemption to protect the remaining equity from the claims of other creditors, even if the homestead property were sold. *See* Wis. Stat. § 815.20(1) (the homestead exemption applies to proceeds derived from the sale of the homestead).

■■■ The trustee submits that this statutory favoritism of the homestead only applies in the foreclosure context and should be irrelevant here. But when taken together, the Wisconsin homestead provisions are designed, as the Wisconsin Supreme Court observed long ago, "to secure the homestead to the debtor ... against all debts not expressly charged upon it." *Hanson v. Edgar*, 34 Wis. 653, 1874 WL 3355, at *3 (Wis.1874). The rights associated with the homestead exemption cannot be easily dismissed, and it is important to recognize how this provision limits the rights of other creditors. Even if other creditors could somehow force the sale of the property, the law would require that the mortgage be satisfied first from the non-homestead parcel, which would leave the debtors free to claim the balance of the equity in the homestead.[8] If the Hartleys had sold the property prior to the bankruptcy, it would seem that they would be free to characterize the payoff in a similar manner—namely, as having first come from the value of the non-homestead land and leaving most of the equity for them to

---

8. Wis. Stat. § 815.21 sets out the procedure for someone to claim a homestead in the context of an execution sale by a judgment creditor. Once the homestead portion is set aside, the remainder can be sold to satisfy the creditor's claim. Here, of course, the creditor would have to deal with the first mortgage encumbering both parcels, which the debtors could demand be paid first from the non-exempt portion of the land in accordance with Wis. Stat. § 846.11. That would leave nothing for the creditor to levy because the homestead property is worth less than the remaining debt and the Hartleys' exemption.

claim as homestead.[9] Far from prohibiting this result, Wisconsin law anticipates that the homestead will be preserved whenever possible. *See Elsner v. Dorn,* 136 Wis. 73, 116 N.W. 768, 769 (Wis.1908) (the right to a homestead is "superior in equity to that of creditors"); *Mogilka v. Jeka,* 131 Wis.2d 459, 389 N.W.2d 359, 362 (Wis.Ct.App.1986) ("homestead rights are preferred over the rights of creditors").

 As the Wisconsin Supreme Court recognized in *Hanson,* Wis. Stat. § 846.11 alters more than the relationship between the debtor and the mortgage holder. It also impacts "the equities between creditors or different mortgagees." 34 Wis. 653, 1874 WL 3355, at *3. More specifically, the statute essentially renders the doctrine of marshaling of assets unavailable to junior lienholders in those situations where the provision applies. Marshaling is an equitable doctrine that attempts to balance the interests of competing creditors. It recognizes that in certain situations it may be fair (or equitable) to compel a creditor with more collateral options at its disposal to exhaust those other assets first so as to not "defeat another creditor, who may resort to only one of the funds." *Sowell v. Federal Reserve Bank,* 268 U.S. 449, 456–57, 45 S.Ct. 528, 69 L.Ed. 1041 (1925).

 The traditional requirements for the application of marshaling are the existence of two creditors of the same debtor, the existence of two funds (or collateral sources) belonging to the debtor, and that only one of the creditors has access to both funds. *In re William*

*Pietsch Co.,* 200 B.R. 207, 210 (Bankr. E.D.Wis.1996) (citing *Meyer v. United States,* 375 U.S. 233, 237, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963)). Normally, the debtor would be in no position to complain about the order in which collateral is sold.[10] That changes in the context of Wis. Stat. § 846.11, as Wisconsin gives the debtor the ability to *insist* that non-homestead property be sold first. *Week,* 213 N.W.2d at 739; *Jennings,* 544 N.W.2d at 246–47.

*Hanson* itself involved this very issue. The debtor owned 160 acres of land, 40 acres of which were his homestead. One creditor had a lien on all of the land, while another creditor had a junior mortgage on only the 120 non-homestead acres. Based on a predecessor to Wis. Stat. § 846.11, the trial court ordered that the senior mortgage should be satisfied first from the sale of the non-homestead land. The junior mortgage holder objected because such a sale would mean that there would be no proceeds left for the payment of its claim. The Wisconsin Supreme Court rejected the idea that the junior lender was entitled to invoke the doctrine of marshaling to force the senior lender to sell the homestead property first and observed:

> But it is further argued, that this law was intended for the protection of the debtor only upon the foreclosure of a single mortgage, and was not designed to affect equities between creditors or different mortgagees. The language, however, of the statute is sufficiently comprehensive to include all cases, and it is certainly consistent with all the legislation in this state upon the subject of exemption, to give the law the con-

---

**9.** Money is fungible, after all, and the value of the homestead parcel supports the claim of an exemption. As the debtors note, the result would likely be different if the homestead were worth less, because their exemption claim cannot exceed the value of the homestead parcel.

**10.** Presuming, of course, that the collateral was sold in a commercially reasonable manner in accordance with applicable law.

struction we have placed upon it. For it cannot be denied that in all the enactments found in our statute books in regard to homestead exemption, the most sedulous care is manifest to secure the homestead to the debtor and to his wife and family, against all debts not expressly charged upon it.

34 Wis. 653, 1874 WL 3355, at *3.

While the trustee contends that he is not trying to invoke the doctrine of marshaling himself, he characterizes the debtors as asserting a sort of "reverse" marshaling he believes to be untenable. He suggests that if marshaling is available at all, in the bankruptcy context it could be used to compel the mortgage lender to satisfy its mortgage from the Hartleys' homestead, leaving *all* of the non-exempt land available for the estate. In his pleadings, he cites a non-Wisconsin case in which a bankruptcy trustee successfully invoked marshaling in the context of a homestead. *See Ramette v. United States (In re Bame)*, 279 B.R. 833 (8th Cir. BAP 2002).

In that case, the court concluded that the federal and state taxing authorities could be required to marshal and directed them to collect first from residential property owned by the non-debtor spouse. Notably, however, the court observed that "[t]he value of the property is sufficient to satisfy all liens on the property as well as [the wife's] homestead exemption therein." 279 B.R. at 838. In other words, marshaling did not detrimentally impact (or reduce) the homestead exemption.[11] In this case, apportioning the mortgage debt between the two parcels in accordance with their relative values effectively reduces the Hartleys' homestead exemption by a considerable margin. The Court agrees with the debtors that Wisconsin law prohibits this result.

The trustee wishes to treat the right found in Wis. Stat. § 846.11 as a minor procedural aspect of Wisconsin foreclosure law, rather than as a component of the Wisconsin homestead exemption. In general, property interests are "created and defined by state law." *Stern v. Marshall,* —— U.S. ——, 131 S.Ct. 2594, 2616, 180 L.Ed.2d 475 (2011) (quoting *Travelers Cas. & Sur. Co. of Am. v. PG & E,* 549 U.S. 443, 451, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007)). Both the estate's interest and the Hartleys' homestead rights in the property are defined and constrained by Wisconsin law.[12] In Wisconsin, the homestead has been elevated to a place of primary importance and a debtor's homestead rights are regarded as equitably superior to the claims of creditors. *Clancey v. Alme,* 98 Wis. 229, 73 N.W. 1014, 1015 (Wis.1898).

Further, once someone has established the right to a homestead, they are entitled "to all the benefits that inhere in a homestead right." *Elsner,* 116 N.W. at 769. One of the benefits (or protections) associated with the homestead is reflected in Wis. Stat. § 846.11. Far from being limited to the context of a foreclosure sale, the underlying principle (i.e., the idea that the debtor's homestead should be preserved whenever possible) justifies allowing the Hartleys to exempt the equity in their homestead while effectively "allocating" the bank's claim to the non-homestead parcel.[13] After all, the homestead exemp-

---

**11.** This is also in keeping with the idea that one generally cannot "marshal" an asset to the *detriment* of a state exemption. *Meyer,* 375 U.S. at 238–40, 84 S.Ct. 318.

**12.** State law also frames the trustee's ability to act as a judgment creditor or hypothetical lien creditor under 11 U.S.C. § 544.

**13.** Obviously, this "allocation" is for exemption purposes only. The bank's mortgage remains valid as to the entire property.

tion has historically enjoyed a "particularly liberal construction." *In re Laube,* 152 B.R. 260, 261 (Bankr.W.D.Wis.1993): *see also Rumage v. Gullberg,* 235 Wis.2d 279, 611 N.W.2d 458, 462 (Wis.2000).

■ The trustee contends that the Hartleys are effectively avoiding the geographic limitations state law places on the homestead and siphoning the equity from a non-exempt asset. But from another vantage point, it is the trustee who seeks to diminish the debtors' homestead in a way no creditor could. Certainly in the context of state law, the Hartleys are only exercising the benefits associated with the homestead exemption.[14] Nothing in the bankruptcy code authorizes a different result. It is true that a bankruptcy trustee may sell property of the estate, but a trustee's sale of homestead property must account for the debtor's exemption rights. Under Wisconsin law, those rights include the ability to "insist" that the bank's mortgage be satisfied first from the non-homestead portion of the property. The trustee can no more ignore that right than he could ignore the homestead exemption itself. The complaint must be dismissed. A judgment shall be entered in accordance with this decision.

---

**14.** In discussing the relative equities of the case, the trustee cited several cases which discussed how much land might be "reasonably necessary" within the meaning of the Wisconsin homestead exemption. *See, e.g., In re Lloyd,* 37 F.3d 271 (7th Cir.1994); *In re Olsen,* 322 B.R. 400 (Bankr.E.D.Wis.2005), and *Farm Credit Bank v. Gibson,* 155 Wis.2d 325, 455 N.W.2d 674 (Wis.Ct.App.1990). The parties here stipulated that the 40–acre parcel was the Hartleys' homestead. They are entitled to make "full use" of available exemptions, and that is all they have done. *See In re Smiley,* 864 F.2d 562, 567 (7th Cir.1989).